**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley W. Harris, et al., | No. CV-12-0894-PHX-ROS-NVW-RRC |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Independent Redistricting Commission, et al., | |
| Defendants. | |

This action brought by voters challenges the 2012 redistricting of the Arizona legislature on the grounds that the districts—

> violate the one-person/one-vote requirement of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and violate the equal population requirement of Ariz. Const. art. 4, pt. 2, § 1(14)(B), by systematically overpopulating Republican plurality districts and systematically under-populating Democrat plurality districts with no lawful state interest justifying such deviations from equality of population among Arizona legislative districts.

First Amended Complaint ¶ 2 (Doc. 35). The principal pending motion is Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted and on other grounds (Doc. 40). Also pending are Defendants' Motion for Judicial Notice (Doc. 41), Plaintiffs' Rule 56(d) Motion (Doc. 46), and the Motion to Intervene by the Navajo Nation and Leonard Gorman (Doc. 27). The motions will be denied. The Navajo Nation may participate as an amicus curiae.

I.      **The Arizona Redistricting Process**

By an initiative measure in the 2000 election, Arizona voters removed legislative and congressional redistricting from the legislature and entrusted them to an Independent Redistricting Commission under set processes with substantive standards.   *See* Ariz. Const. art. IV, pt. 2, § 1.   Four party members of the Commission are appointed, one each by the highest ranking majority and minority member of the Senate and the House of Representatives.   They choose an independent fifth member from nominees made by another commission.

The Commission must follow a four-step process.   *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 220 Ariz. 587, 597, 208 P.3d 676, 686 (2009).   First, the Commission must create "districts of equal population in a grid-like pattern across the state."   Ariz. Const. art. IV, pt. 2, § 1(14).   Second, the Commission must adjust the equally populated grid map "as necessary to accommodate" six goals enumerated in the Arizona Constitution to create a draft map.   To do so, the Commission must begin by ensuring that the configuration of the districts complies with the United States Constitution and the Voting Rights Act.   Ariz. Const. art. IV, pt. 2, § 1(14)(A).   Then the Commission must adjust the map to accomplish the remaining five goals "to the extent practicable": (1) equal population in congressional and legislative districts; (2) geographically compact and contiguous districts; (3) district boundaries that respect communities of interest; (4) district lines drawn using visible geographic features, city, town and county boundaries, and undivided census tracts; and (5) competitive districts, where such districts would create no significant detriment to the other factors.   Ariz. Const. art. IV, pt. 2, §§ 1(14)(B)-1(14)(F).   Places of residence of incumbents or candidates may not be identified or considered.   Ariz. Const. art. IV, pt. 2, § 1(15).

Third, the Commission must advertise its adjusted draft map for at least 30 days and consider both public comments and any recommendations made by the Arizona legislature.   Ariz. Const. art. IV, pt. 2, § 1(16).   Lastly, the Commission must establish final district boundaries and certify the new districts to the Arizona Secretary of State.

Ariz. Const. art. IV, pt. 2, §§ 1(16)-1(17).

The Commission approved a map by a vote of three to two, the independent chair and the two Democratic Party appointees against the two Republican Party appointees.  It has a maximum population deviation of 8.8%.  On April 26, 2012, the United States Department of Justice pre-cleared the plan under Section 5 of the Voting Rights Act, and Plaintiffs filed this action the next day.

**II.    Motion to Dismiss**

Defendants, who are the Commission and its members, move to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and Rule 8 for failure to state a claim upon which relief can be granted.

**A.    Legal Standard**

To state a claim for relief under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This "short and plain statement" must also be "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged.  *Iqbal*, 556 U.S. at 678.  A plaintiff's plausible factual allegations are taken as true, but legal conclusions or conclusory factual allegations are not.  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Rather, the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

## B.   Federal Equal Protection Claims for Population Deviation

Plaintiffs allege that the adopted legislative map violates the Equal Protection Clause of the Fourteenth Amendment by diluting the Plaintiffs' votes through unequal population distribution in legislative districts for an impermissible purpose. A challenge to state legislative apportionment under the Equal Protection Clause presents a justiciable controversy. *Baker v. Carr*, 369 U.S. 186 (1962). The Equal Protection Clause requires that both houses of a state legislature "must be apportioned on a population basis." *Reynolds v. Sims*, 377 U.S. 533, 577 (1964). A state must "make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." *Id.* But mathematical precision in legislative districts is not a workable constitutional requirement. In light of that practical concern, states may exercise some flexibility in constructing legislative districts. "So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible." *Id.* at 579. Any divergence from equality among districts must therefore result from "factors that are free from any taint of arbitrariness or discrimination." *Roman v. Sincock*, 377 U.S. 695, 710 (1964).

A "maximum population deviation under 10%" does not, without more, make out a prima facie case under the Equal Protection Clause. *Brown v. Thomson,* 462 U.S. 835, 842 (1983). There is a rebuttable presumption that a population deviation less than 10% was the result of an "honest and good faith effort to construct districts . . . as nearly of equal population as is practicable." *Daly v. Hunt,* 93 F.3d 1212, 1220 (4th Cir. 1996) (quoting *Reynolds*, 377 U.S. at 577).

The result is a burden-shifting framework for population deviation claims under the Equal Protection Clause. If the maximum population deviation in a legislative apportionment plan is less than 10%, the burden shifts to the plaintiff to prove that the apportionment was arbitrary or discriminatory. *Daly,* 93 F.3d at 1220. To meet that burden, a plaintiff must show any deviation is "an arbitrary or discriminatory policy."

- 4 -

*Larios v. Cox*, 305 F. Supp. 2d 1335, 1339 (N.D. Ga. 2004) (citing *Roman*, 377 U.S. at 710), *aff'd*, 542 U.S. 947 (2004).  Further, the plaintiff must prove that "the asserted unconstitutional or irrational state policy is the *actual reason* for the deviation." *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 365 (S.D.N.Y. 2004) (quoting *Marylanders for Fair Representation v. Schaefer*, 849 F. Supp. 1022, 1032 (D. Md. 1994)).

Plaintiffs allege that the Commission systematically overpopulated Republican districts and under-populated Democratic districts for the sole purpose of maximizing Democratic Party strength in the state legislature.  Their only federal challenge is that bare partisan political advantage is not a rational state policy justifying population deviation under the federal constitution and is a prohibited policy under Arizona law.

## C.   Discussion

On a motion to dismiss, the facts alleged must be taken as true unless conclusory or implausible.  Plaintiffs have alleged data, details, context, and motivations arguably inferable from conduct.  Regardless of what they can prove at trial, Plaintiffs have sufficiently alleged that the Commission added to some people's votes and diluted other people's votes based only on their expected party preference.

Under existing Supreme Court precedent, it is unclear whether pure partisanship is an arbitrary or discriminatory purpose and would therefore be an impermissible basis for population deviation.  Likewise, it is unclear whether pure partisanship can be a legitimate state policy in the eyes of federal constitutional law if state law itself bars this purpose for population deviation.  Both sides argue from the force of general principles, but neither side has Supreme Court authority on point.  *See*, *e.g.*, *Cox v. Larios*, 542 U.S. 947, 949-50 (2004) (Stevens, J, concurring in summary affirmance) ("[T]he equal-population principle remains the only clear limitation on improper districting practices, and we must be careful not to dilute its strength"); *id.* at 951 (Scalia, J., dissenting from summary affirmance) ("No party here contends that . . . this Court has addressed the question" of whether a redistricting plan with less than 10% population deviation may be invalidated on the basis of evidence of partisan political motivation); *League of United*

- 5 -

1   *Latin Am. Citizens v. Perry*, 548 U.S. 399, 423 (2006) ("Even in addressing political

2   motivation as a justification for an equal-population violation . . . *Larios* does not give

3   clear guidance.").

4        The Arizona Constitution mandates equal population in the redistricting process,

5   and that too may bear on the federal Equal Protection claim from population deviation.

6   The Arizona Constitution requires the mapping process to begin with equal population,

7   with adjustments to meet only six permitted goals, none of which clearly allows for

8   partisan political advantage or proportional political influence.[1]   One of the goals is equal

9   population to the extent practicable.   Ariz. Const. art. IV, pt. 2, § 1(14)(B).   At oral

10   argument, all parties acknowledged that the question of whether § 1(14)(B) is more

11   stringent than the 10% burden-shifting standard under federal law has never been

12   adjudicated.   Language bearing on the issue in *Arizona Minority Coalition*, 220 Ariz.

13   587, 208 P.3d 676, is dictum.   Whether any of these issues matter will turn on the actual

14   facts proven at trial.

15        In light of the foregoing, we cannot say to a certainty that Plaintiffs have stated no

16   federal Equal Protection claim upon which relief can be granted.   Nor can we now say to

17   a certainty that the Arizona equal population claim fails as a matter of law, whether on its

18   own or in connection with the federal claim.   We must therefore deny the Motion to

19   Dismiss without prejudice and leave the issue and the case to be decided after trial and

20   full briefing.

21        **D.**    **Other Pleading Challenges**

22        The Commission contends that the First Amended Complaint exceeds the "short

23   and plain statement of the claim showing the pleader is entitled to relief" required by

24   Federal Rule of Civil Procedure 8(a)(2) and that the allegations are not "simple, concise,

25   ———————————————

26        [1] The final goal under the Arizona constitution is the creation of "competitive
   districts."   Ariz. Const. art. IV, pt. 2, § 1(14)(F).   The parties have not addressed what

27   "competitive" means in this context and whether that goal requires the Commission to
   assess partisan consideration.

28

and direct" as required by Rule 8(d)(1).   Some allegations are said to be irrelevant, immaterial, impertinent, inflammatory, or scandalous.   The Complaint may be adjectivally aggressive in places, but the challenged substance is permissible pleading under *Twombly* and *Iqbal*.   It alleges a pattern of actions from which one might plausibly infer the actual and sole purpose of the Commission in ultimately effecting the population deviation it adopted.   Parties are permitted to try to plead "[f]actual allegations [sufficient] to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   They need not and may not rely on bare conclusory allegations alone.

### III.    Motion for Judicial Notice

The Commission's Motion for Judicial Notice (Doc. 41) of selected portions of the record of Commission meetings is misplaced; but even if granted it would not make a difference in deciding the Motion to Dismiss.   The Commission offers selected portions of the record of Commission meetings to establish conclusively that it had legitimate bases for its redistricting decisions—and to bar any pleading to the contrary.   But the selections the Commission offers may be materially incomplete.   Moreover, that things were said by or before the Commission does not make them necessarily true.   Judicial notice is permitted only if the fact is generally known or capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).   If the statements were judicially noticed, it would prove only that statements were made, not that they are true or reflect the Commission's actual purpose. Defendants' Motion for Judicial Notice (Doc. 41) will be denied.

Plaintiffs' Rule 56(d) Motion (Doc. 46) for a continuance to obtain additional evidence will be denied as moot, as the Court has not converted the Motion to Dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56 and 12(d) or granted Defendants' Motion for Judicial Notice (Doc. 41).

### IV.    Motion to Intervene by the Navajo Nation

The Motion to Intervene by the Navajo Nation and Leonard Gorman (Doc. 27) will be denied for failure to show that disposition of this action may, as a practical matter,

impair or impede their ability to protect their interest in this action and because their interest is adequately represented by the Commission.  The Arizona portion of the Navajo Reservation lies within Legislative District 7 ("LD7"), the most under-populated district in the adopted plan and the sole majority-minority Native American legislative district. The Navajo Nation was an active participant in the Arizona redistricting process and coordinated its efforts through Mr. Gorman, Director of the Navajo Human Rights Commission.

### A.   Intervention as a Matter of Right

To intervene as a matter of right a party must establish that: (1) the motion is timely; (2) the intervenor possesses a significant interest in the subject matter of the action; (3) the intervenor is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interests; and (4) the interests of the intervenor may not be adequately represented by existing parties.  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  "Failure to satisfy any one of the requirements is fatal to the application."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2011).  Each of the requirements must be interpreted broadly in favor of intervention, *Prete v. Bradbury,* 438 F.3d 949, 954 (9th Cir. 2006), and "our review is guided primarily by practical considerations, not technical distinctions."  *Mont. Wilderness*, 647 F.3d at 897 (quoting *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir.2001)).

The Navajo Nation's Motion is timely.  The Nation has an interest in maintaining a majority-minority Native American district.  Generously read, its interest "is protectable under some law and . . . there is a relationship between the legally protected interest and the claims at issue."  *Id.* at 897.  However, the Nation cannot plausibly show that its interest would be impaired absent intervention—that it would "be substantially affected in a practical sense by the determination made in an action."  *Id.* (quoting Fed. R. Civ. P. 24 advisory committee's note).  Eliminating the under-population in LD7 could not change the overwhelming majority-minority Native American character of LD7.

In the prior redistricting plan there was one Native American majority-minority legislative district (the "benchmark district") with Native American population of 63.7% and Native American voting age population of 59.6%.  In the new LD7, Native American population is 66.9%.  (Doc. 27 at 7.)  There is an insignificant discrepancy in the record as to whether LD7 has a Native American voting age population of 63.1% (Doc. 44 at 6) or 63.7% (Doc. 27 at 7), which does not affect the analysis.  Further, there was an immaterial difference in Native American voting age population between the Commission's draft legislative map and the adopted final map, which increased from 61.9% to either 63.1% or 63.7%.  (Doc. 44 at 6.)  Both the draft map and the final map thus increased the Native American voting age population over the benchmark district. Even if the LD7 Native American voting age population returned to that of the equal population draft map, it would not retrogress from the prior benchmark district.  There is no plausible outcome of this action that would impair the interest upon which the Navajo Nation and Mr. Gorman predicate their intervention—avoidance of retrogression and maintenance of a majority-minority Native American district.

Of course, if Plaintiffs prevail in this action and the Commission is ordered to revise the plan to reduce the population deviation, the Nation can participate in further proceedings before the Commission on all matters, not just population deviation, on an equal footing with all others.  But the Nation's interest in all matters does not entitle it to intervene here, any more than those matters would entitle everyone who participated in the Commission proceedings to intervene in this action.

The Navajo Nation has not met its burden to show that its ability to protect its interests would be impaired by the disposition of this case.

The Navajo Nation also fails to show that the Commission may not adequately represent the Nation's interest.  "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."  *Mont. Wilderness*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).  Adequacy of representation considers: "(1)

- 9 -

whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. Because the Navajo Nation and the Commission "share the same ultimate objective" of upholding the Commission's final legislative map, "a presumption of adequacy of representation arises." *Mont. Wilderness*, 647 F.3d at 898 (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997)). "To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation." *Id.* (quoting *Arakaki,* 324 F.3d at 1086).

The Commission's interest in defending the entire plan does not weaken its shared interest with the Nation in defending LD7. The Nation has not shown that it would offer anything that the Commission would neglect. Further, the adequacy of the Commission's representation of the Nation's interest is not an abstraction. The Court invited the Navajo Nation to file a proposed motion to dismiss that was "focused on matters affecting their purported separate interest" and made clear that "repetitive briefing or other repetitive presentation would not be helpful to the Court." (Doc. 38 at 2.) Despite this warning, the Navajo Nation's proposed brief is largely repetitive of the Commission's Motion to Dismiss.

## B.   Permissive Intervention

In its discretion, the Court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision is discretionary and "subject to considerations of equity and judicial economy." *Garza v. Cnty. of Los Angeles,* 918 F.2d 763, 777 (9th Cir. 1990). One consideration is whether intervention will unduly delay the proceedings or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

An intervenor has most of the rights of a party, including presentation of its own motions and evidence. Time is critical in this action, as it must be concluded with relief

implemented or denied, and appellate review taken, without disrupting the 2014 elections.  Six months have already passed, and the pleadings are not even closed.  A trial must be had by March and a prompt ruling thereafter.   An unnecessary party adds complexity and risk of delay without countervailing benefit.   Therefore, permissive intervention will be denied. The Motion to Intervene by the Navajo Nation and Leonard Gorman (Doc. 27) will be denied.

The benefit of the Navajo Nation's voice can be had by amicus curiae participation, without complicating the expeditious processing of the case.  Therefore, the Navajo Nation will be granted leave to file a brief as amicus curiae at the same time as the Commission's principal brief is filed.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 40) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Judicial Notice (Doc. 41) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Rule 56(d) Motion (Doc. 46) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Intervene by the Navajo Nation and Leonard Gorman (Doc. 27) is DENIED.

IT IS FURTHER ORDERED that the Navajo Nation is granted leave to participate as amicus curiae and may file a brief at the same time as the Commission's principal brief is filed.

/

/

/

1          IT IS FURTHER ORDERED that Plaintiffs are granted leave to amend their

2    complaint by November 16, 2012, solely to amend their allegations concerning

3    legislative district 8.

4          Dated this 16th day of November, 2012.

 

                                        Roslyn O. Silver

                              Chief United States District Judge